550 S.E.2d 311

**In the Matter of the Care and Treatment of Johnny MATTHEWS, Appellant.**

No. 25322.

Supreme Court of South Carolina.

Heard March 20, 2001

Decided July 23, 2001.

Andrew D. Grimes, of Andrew D. Grimes, P.A., of Summerville, and John L. Drennan, of Joye Law Firm, L.L.P., of North Charleston, both for appellant.

Attorney General Charles M. Condon, Deputy Attorney General Treva Ashworth, Senior Assistant Attorney General Kenneth P. Woodington, and Assistant Attorney General Steven G. Heckler, all of Columbia, for respondent.

TOAL, Chief Justice:

Johnny Matthews ("Matthews") appeals the trial court's order holding he was a sexually violent predator pursuant to the Sexually Violent Predator Act ("Act"). S.C.Code Ann. §§ 44–48–10 through 44–48–170 (Supp.2000). We affirm.

## FACTUAL/ PROCEDURAL BACKGROUND

At the time Matthews was charged with the offenses which led to the present proceeding, he was a custodian employed at North Park Village Head Start Program in North Charleston. Approximately 80 children between the ages of three and five were participating in the program. Matthews was charged with eight counts of committing lewd acts upon a child. Six charges were dropped, and Matthews pled guilty to two counts of committing lewd acts upon a child.[1] Matthews was sentenced to five years imprisonment.

With the expiration of Matthews' sentence approaching, a multidisciplinary team accessed Matthews' records pursuant to the Sexually Violent Predator Act. On October 1, 1998, the team found Matthews satisfied the definition of a sexually violent predator. By order dated May 6, 1999, the court below found probable cause and ordered Matthews into custody pending trial.

On July 16, 1999, a non-jury trial was held before the Honorable A. Victor Rawl in Charleston. Following the trial, the trial court entered a written order finding, beyond a reasonable doubt, Matthews was a sexually violent predator as defined by the Act and, therefore, should be committed for treatment. Matthews' constitutional arguments were rejected.

Matthews filed a notice of appeal in the Court of Appeals. The Court of Appeals transferred the case to this Court pursuant to Rule 204(a), SCACR, on the ground the principal issue on appeal would be a constitutional challenge to the Sexually Violent Predator Act. The issues before this Court are:

I. Did the trial court have jurisdiction to hear the State's civil commitment case against Matthews where the trial was held more than sixty days after the probable cause hearing in violation of S.C.Code Ann. § 44–48–90 (Supp.2000)?

II. Did the trial court have jurisdiction over this action when only four members, instead of the five listed in

---

1. These were pleas under *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).

S.C.Code Ann. § 44–48–50 (Supp.2000), reviewed Matthews' records?

III. Did the trial court err in denying Matthews' motion for a directed verdict on the ground the evidence was insufficient to show he was a sexual predator?

IV. Does South Carolina's Sexually Violent Predator Act violate the Double Jeopardy Clauses of the Federal[2] and State[3] Constitutions?

## LAW/ ANALYSIS

### I. S.C.Code Ann. § 44–48–90

Matthews argues the trial court lacked jurisdiction because the State failed to bring the case to trial within the sixty day time period set forth in section 44–48–90 without having the trial court issue a continuance.[4] We agree the State was statutorily required to bring Matthews' case to trial within sixty days of the probable cause hearing. However, we disagree the State's failure to do so resulted in the trial court losing jurisdiction to hear the case.

We have stated, "Subject matter jurisdiction is the power to hear and determine cases of the general class to which the proceedings in question belong." *Dove v. Gold Kist,* 314 S.C. 235, 237–238, 442 S.E.2d 598, 600 (1994) (citations and internal quotations omitted). In *Gold Kist* we found, "the statute grants the court of common pleas throughout the State subject matter jurisdiction to hear [the litigants' case]." *Id.* at 238, 442 S.E.2d at 600. In the instant case, the Act provides:

Within sixty days after the completion of a hearing held pursuant to Section 44–48–80 [probable cause], *the court shall conduct a trial to determine whether the person is a*

2. U.S. CONST. amend. V.

3. S.C. CONST. art. I, § 12.

4. Although Matthews did not challenge the trial court's subject-matter jurisdiction, Matthews can raise the issue for the first time on appeal. *See, e.g., Lake v. Reeder Constr. Co.,* 330 S.C. 242, 248, 498 S.E.2d 650, 653 (Ct.App.1998) ("Lack of subject matter jurisdiction can be raised at any time, can be raised for the first time on appeal, and can be raised *sua sponte* by the court.").

sexually violent predator.... The trial may be continued upon the request of either party and a showing of good cause, or by the court on its own motion in the due administration of justice, and only if the respondent will not be substantially prejudiced.

S.C.Code Ann. § 44–48–90 (Supp.2000) (emphasis added). The definition section of the Act provides: *"Court* means the court of common pleas." S.C.Code Ann. § 44–48–30(7) (Supp. 2000) (emphasis added). Therefore, the language of the statute clearly vests subject matter jurisdiction over cases brought pursuant to the Act with the court of common pleas.

Even though we find the court of common pleas had subject matter jurisdiction to hear Matthews' case, we do find the legislature's use of the term "shall" in section 44–48–90 indicates the holding of a trial within sixty days of the probable cause hearing is mandatory. *See, e.g., South Carolina Police Officers Retirement Sys. v. Spartanburg,* 301 S.C. 188, 391 S.E.2d 239 (1990) ("shall" is considered mandatory under principles of statutory interpretation); *South Carolina Dep't of Highways & Pub. Transp. v. Dickinson,* 288 S.C. 189, 191, 341 S.E.2d 134, 135 ("Ordinarily the use of the word 'shall' in a statute means that the action referred to is mandatory."). The language of the Act does allow a trial to be held outside the sixty day period, but only under certain conditions.

It is not a significant burden on the State or the trial court to require the issuance of a continuance, or even a notation in the record, indicating: (1) the trial cannot be held within sixty days; (2) good cause for the delay; and (3) the respondent will not suffer prejudice. Furthermore, the fact that the legislature set forth the terms under which a trial could be held outside the sixty day period is further evidence of the legislature's intent to require strict adherence to the mandated time frame.

However, we find the sixty day time period set forth in the Act is not a jurisdictional requirement. Matthews should have filed a motion to dismiss when the State failed to bring the case to trial within sixty days without asking for a continuance. By failing to make a motion to dismiss, Matthews waived his right to challenge the State's failure to comply with the requisite time period.

Therefore, we hold the State's failure to comply with the time period set forth in the section, when a proper continuance has not been issued, does not deprive the court of subject matter jurisdiction to hear the case. When the sixty day period has passed, and no continuance has been granted, the proper procedure for a respondent to follow is to file a motion to dismiss.

## II. S.C.Code Ann. § 44–48–50

■ Matthews argues the trial court lacked jurisdiction over this action because he was not properly evaluated. He contends that the court's jurisdiction is predicated on the multidisciplinary team's conclusion he was a sexually violent predator. He asserts that the action of the multidisciplinary team was *void ab initio* because the make-up of the multidisciplinary team did not comply with the requirements of S.C.Code Ann. § 44–48–50 (Supp.2000).[5] We disagree.

Before an action is commenced under the Act, the Director of the Department of Corrections appoints a multidisciplinary team to review the records of the alleged predator. S.C.Code Ann. § 44–48–50 (Supp.2000). The team assesses whether or not the person meets the definition of a sexually violent predator. *Id.* If the team determines the person is a predator, the case is then referred to the prosecutor review committee. The Act provides:

Membership of the [multidisciplinary] team *must* include:

(1) a representative from the Department of Corrections;

(2) a representative from the Department of Probation, Parole, and Pardon Services;

(3) a representative from the Department of Mental Health who is a trained, qualified mental health clinician with expertise in treating sexually violent offenders;

(4) a retired judge appointed by the Chief Justice who is eligible for continued judicial service pursuant to Section 2–19–100; and

---

5. State's Exhibit One shows the multidisciplinary team which reviewed Matthews' records did not include a representative from the Office of Appellate Defense.

(5) the Chief Attorney of the Office of Appellate Defense or his designee.

S.C.Code Ann. § 44–48–40 (Supp.2000) (emphasis added).

This section is written in mandatory language. *See South Carolina Police Officers Retirement Sys.*, *supra* ("must" is considered mandatory under the principles of statutory construction). The statute requires the multidisciplinary team to *consist* of five members. However, it does not require all five members of the team to be present at all meetings. The normal rules which govern the proceedings of a governmental body should apply.

■ "In the absence of any statutory or other controlling provision, the common-law rule that a majority of the whole board is necessary to constitute a quorum applies, and the board may do no valid act in the absence of a quorum." *Garris v. Governing Bd. of the State Reinsurance Facility*, 333 S.C. 432, 453, 511 S.E.2d 48, 58 (1998) (citations omitted). Section 44–48–50 contains no special provision requiring all members of the team to be present, nor does it contain a requirement that the decisions of the team be unanimous or made by any majority other than a simple majority. Here, four members of the team met and unanimously decided Matthews qualified as a sexually violent predator under the provisions of the Act.

We hold the plain language of the statute indicates the team must consist of five members, but does not require that all be present to issue the report. A majority decision by a quorum of the team was made in this case, and, therefore, Matthews' arguments regarding this issue are without merit.

### III. Directed Verdict

Matthews argues the trial court erred in denying his motion for a directed verdict on the ground the evidence was insufficient to show he was a sexually violent predator. We disagree.

■ On an appeal from the trial court's denial of a motion for a directed verdict, the appellate court may only reverse the trial court if there is no evidence to support the trial court's ruling. *Swinton Creek Nursery v. Edisto Farm Credit*, 334

S.C. 469, 514 S.E.2d 126 (1999). In ruling on a motion for directed verdict, the trial court is concerned with the existence of evidence, not its weight. *State v. Cooper*, 334 S.C. 540, 551–552, 514 S.E.2d 584, 590 (1999).

■ S.C.Code Ann. § 44–48–30(1)(b) defines "sexually violent predator" as someone who "suffers from a mental abnormality or personality disorder that makes the person likely to engage in acts of sexual violence if not confined in a secure facility for long-term control, care, and treatment." Subsection 9 goes on to say "the person's propensity to commit acts of sexual violence is of such a degree as to pose a menace to the health and safety of others." S.C.Code Ann. § 44–48–30(9) (Supp.2000). "Mental Abnormality" is defined in the Act as a "condition affecting a person's emotional or volitional capacity that predisposes the person to commit sexually violent offenses." S.C.Code Ann. § 44–48–30(3). We find more than sufficient evidence in the record to support the conclusion Matthews suffers from uncontrollable behavior. Matthews' arguments concerning the evidence simply go to the weight of the evidence not its sufficiency.

Dr. Elin Barth Berg testified on behalf of the State. Dr. Berg conducted a three hour interview with Matthews, and spent four hours reviewing the records supplied by the Attorney General. Dr. Berg testified Matthews suffers from pedophilia. She stated Matthews has a "probable risk of recidivism of sexually violent acts in the community," and it was "more likely than not" that Matthews would re-offend. Dr. Berg further described a pedophile's urges as "irresistible . . . a response to a irresistible impulse." She stated, in her medical opinion, Matthews was at "above average risk" to re-offend. She concluded, "he is—and I'm offering my opinion based on educational and clinical experience—at this time a better candidate for in-patient treatment. And the reason is he still expresses that he does not believe that he has a problem . . ." [6] After hearing the testimony, the trial court concluded "beyond a reasonable doubt . . . [Matthews] suffers

---

**6.** There is other testimony by Dr. Berg which supports the trial judge's decision not to grant a directed verdict. However, in light of the standard of review, these few excerpts provide enough evidence to show the trial judge did not err in his refusal to grant the directed verdict.

from a mental defect or personality disorder which makes him likely to engage in further acts of sexual violence if he is not confined for long-term control, care, and treatment."

We find sufficient evidence in the record to support the trial judge's denial of Matthews' motion for a directed verdict.

## IV. Double Jeopardy Challenge

Matthews argues the trial court erred in concluding the Act does not violate the Double Jeopardy Clauses of the Federal [7] and State [8] Constitutions. We disagree.

### A. Federal Constitution

The Double Jeopardy Clause of the Fifth Amendment, made applicable to the states through the Fourteenth Amendment, provides that no one shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. CONST. amend. V.

The Double Jeopardy Clause protects against multiple punishments for the same offense. *Brown v. Ohio*, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977). However, the Double Jeopardy Clause is implicated only in criminal proceedings. U.S. CONST. amend. V; S.C. CONST. art. I, § 12; *In the Matter of Chastain*, 340 S.C. 356, 532 S.E.2d 264 (2000). As the United States Supreme Court recently reiterated, the determination whether a statute is civil or criminal is primarily a question of statutory construction, which must begin by reference to the act's text and legislative history. *Seling v. Young*, 531 U.S. 250, 121 S.Ct. 727, 148 L.Ed.2d 734 (2001). Where the legislature has manifested its intent that the legislation is civil in nature, the party challenging that classification must provide "the clearest proof that the statutory scheme is so punitive in either purpose or effect as to negate the [legislature's] intention." *Id.* Our Act specifies the purpose of the Act is **civil** commitment. *See* S.C.Code Ann. § 44–48–20. Matthews, therefore, bears this heavy burden.

---

7. U.S. CONST. amend. V.

8. S.C. CONST. art. I, § 12.

 South Carolina's Act is modeled on Kansas' Sexually Violent Predator Act. The United States Supreme Court held Kansas' Act is a civil, non-punitive scheme. *Kansas v. Hendricks,* 521 U.S. 346, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997). Matthews contends there are differences in the language of our Act and the Kansas Act, thereby effectively distinguishing the United States Supreme Court's holding in *Hendricks.* We find Matthews does not effectively distinguish the Kansas Act from our own. Therefore, we hold South Carolina's Act does not violate the Double Jeopardy Clause of the Federal Constitution.

The United States Supreme Court held the Kansas Act was civil rather than criminal based on numerous factors:

(1) it did not implicate retribution or deterrence;

(2) prior criminal convictions were used as evidence, but were not a prerequisite for commitment;

(3) no evidence of scienter was necessary for a commitment;

(4) the Act was not intended to be a deterrent;

(5) release is dependent upon the stated purpose of the Act, that is, once the person is no longer a threat to others;

(6) the provision of procedural safeguards similar to those found in criminal proceedings do not transform a civil proceeding into a criminal one;

(7) the lack of treatment for those deemed untreatable does not transform detention from civil to criminal; and

(8) confinement in a segregated unit within a prison is not dispositive because the person has been found a danger to the community, and the circumstances are essentially the same as for other involuntarily committed persons in mental hospitals.

*Hendricks, supra; Seling, supra.*

Applying these factors to the Act, we find the only distinction that can be made is South Carolina's Act defines a sexually violent predator as a person with a prior conviction for a sexually violent offense (factor 2, *supra.*). *See* S.C.Code Ann. § 44–48–30(1). The use of the word "conviction" is somewhat misleading, however, since under the Act it includes persons charged but found incompetent to stand trial, those found not guilty by reason of insanity, and those found guilty

but mentally ill. S.C.Code Ann. § 44–48–30(6)(c),(d), and (e) (Supp.2000). Therefore, we find this is a distinction without a difference.

Matthews attempts to distinguish South Carolina's Act and the United States Supreme Court's holding in *Hendricks* on three grounds. First, he argues the face of South Carolina's Act shows the General Assembly intended the Act to be punitive since: (1) it places upon the "prosecutorial arm" of the State the responsibility for bringing petitions under the Act; and (2) it was placed in the health section of the South Carolina Code. The fact the South Carolina Attorney General's office files the commitment petition does not effectively distinguish South Carolina's Act since the Kansas Act also directs the Attorney General's office to file the appropriate petition. *See* Kan.Code Ann. § 59–29a04. Furthermore, the Attorney General's office responsible for bringing these cases in South Carolina is a branch of the civil division. Finally, there is no logical connection between who brings the case and the degree to which the result is "punitive."

Matthews also argues South Carolina's Act is punitive on its face and is distinguishable from the Kansas Act since the General Assembly placed the Act into the health section of the Code instead of the probate section. This argument is without merit. The health section of the code also includes the provisions for involuntary commitment of the mentally ill. *See* S.C.Code Ann. § 44–17–410. Furthermore, simply because South Carolina's Act is placed in a title which provides for a few criminal offenses on unrelated topics is not evidence the Act is "punitive."

Secondly, Matthews argues South Carolina's Act is "retributive." The United States Supreme Court in *Hendricks* specifically held the Kansas Act was not retributive. *See Hendricks*, 521 U.S. at 362, 117 S.Ct. 2072. Matthews argues nothing that was not rejected in *Hendricks*. We agree with the United States Supreme Court's analysis and hold our Act is not "retributive."

Finally, Matthews argues he is subject to the conditions placed on state prisoners, and he will not receive treatment for his alleged disease. The conditions of confinement are not prescribed by the Act, but result from administrative deci-

sions. Therefore, the conditions of confinement cannot be used to determine legislative intent. *Cf., Myrtle Beach Hosp. v. City of Myrtle Beach,* 341 S.C. 1, 532 S.E.2d 868 (2000) (executive agency policies are not evidence of legislative intent). Furthermore, the Act expressly provides, "The involuntary detention or commitment of a person pursuant to this chapter shall conform to constitutional requirements for care and treatment." S.C.Code Ann. § 44–48–170.

Matthews has failed to meet his burden of showing the Act is punitive in nature. *Seling, supra.* We find the United States Supreme Court's decision in *Hendricks* is controlling and, therefore, South Carolina's Act does not violate the Double Jeopardy Clause of the Federal Constitution.

## B. State Constitution

Matthews also contends the Act violates the Double Jeopardy Clause of the South Carolina Constitution. We disagree.

We have expressly held the Double Jeopardy Clause of the South Carolina Constitution does not afford broader protection than its federal counterpart. *State v. Easler,* 327 S.C. 121, 132, 489 S.E.2d 617, 623 (1997) ("[T]he courts of this state have never interpreted the state double jeopardy provision independently of the Fifth Amendment. . . . [W]e decline to extend broader protection under our state constitution than that afforded under the federal constitution."). As discussed above, Matthews has not distinguished Kansas' Act from our own.

Therefore, we hold South Carolina's Act does not violate the double jeopardy provision of the South Carolina Constitution.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the decision of the trial court.

MOORE, WALLER, BURNETT and PLEICONES, JJ., concur.