604 S.E.2d 709

**John Hall CANNON, Appellant,**

v.

**SOUTH CAROLINA DEPARTMENT OF PROBATION,
Parole and Pardon Services, Respondent.**

No. 3871.

Court of Appeals of South Carolina.

Heard Sept. 15, 2004.

Decided Oct. 11, 2004.

Rehearing Denied Nov. 19, 2004.

426

Richard A. Harpootlian and M. David Scott, both of Columbia, for Appellant.

Teresa A. Knox, Deputy Director of Legal Services, Tommy Evans, Jr., Legal Counsel and Legal Counsel J. Benjamin Aplin, all of Columbia, for Respondent.

SHORT, J.

John Cannon appeals from an order requiring him to submit a DNA sample as a condition of his parole. Cannon argues the statute was amended to exclude him from the DNA requirement and forcing him to provide a sample violates the *ex post facto* clauses of the United States and South Carolina Constitutions. We affirm.

## FACTS

Cannon was convicted of murder in April 1972 and was sentenced to life imprisonment. He subsequently pled guilty to two additional counts of murder and received concurrent life sentences for those two counts. All three murder counts arose out of the same occurrence.

On October 12, 1983, the South Carolina Department of Probation, Parole and Pardon Services (the "Department") released Cannon from prison. He was to remain under the Department's supervision for the remainder of his life and was required to "carry out all instructions [his parole agent] gives," but was not required to submit a blood sample as a condition of his release. Twelve years later, South Carolina enacted the State Deoxyribonucleic Acid Identification Record Database Act (the "DNA Act"), found in sections 23–3–600 to 700 of the South Carolina Code (Supp.2003), which require a person "currently paroled and remaining under supervision of the State" to provide a DNA sample as a condition of his or her parole. S.C.Code Ann. § 23–3–620(C) (Supp.1995); Act No. 497, 1994 S.C. Acts 5816–5817. In July 2000, the DNA Act was amended to require a DNA sample from a person "convicted or adjudicated delinquent before July 1, 2000, who is serving a probated sentence or is paroled on or after July 1, 2000." S.C.Code Ann. § 23–3–620(E) (Supp.2003). In February 2001, the Department notified Cannon that he was required by law to provide a DNA sample as a condition of his

parole and failure to do so would be considered a violation of his parole.

In March 2002, Cannon instituted a declaratory judgment action, seeking a determination whether the DNA Act requires, as a condition of his parole, that he submit a DNA sample for inclusion in the DNA database. Cannon also sought and was granted a temporary restraining order precluding the Department from requiring him to submit a DNA sample while the case was pending in court.

A non-jury trial was convened on May 27, 2003. On August 1, 2003, Judge Barber signed an order finding the DNA Act applied to Cannon and required him to submit a DNA sample as a condition of his parole. Judge Barber also determined the DNA Act did not violate the *ex post facto* clause of the United States Constitution. On August 19, 2003, Cannon filed a motion to alter or amend the judgment pursuant to Rule 52 and Rule 59(e), SCRCP, which was denied on September 10, 2003. Cannon appeals.

## STANDARD OF REVIEW

"We have held that where a law case is tried by a judge without a jury, his findings of fact have the force and effect of a jury verdict upon the issues, and are conclusive upon appeal when supported by competent evidence." *Chapman v. Allstate Ins. Co.*, 263 S.C. 565, 567, 211 S.E.2d 876, 877 (1975).

## LAW/ANALYSIS

### I. Statutory Construction

■ Cannon claims the DNA Act does not require him to submit a DNA sample as a condition of his parole because he was released on parole prior to July 1, 2000. We disagree.

Cannon argues the trial court erred by determining the word "paroled" is synonymous with the phrase "remaining on parole on or after July 1, 2000" because the legislature excluded the phrase "remaining under supervision" from the amended statute. Cannon asserts the 2000 amendments to the statute materially changed the DNA Act by substituting language that requires DNA samples from only those persons convicted of the specified offenses who are "paroled on or

after July 1, 2000." S.C.Code Ann. § 23–3–620(E) (Supp. 2003). Cannon concludes the legislature intended a departure from the original law by excluding those offenders paroled prior to the effective date of the amendment, and therefore he is not required to provide a DNA sample under the amended act because he was paroled prior to July 1, 2000.

 "The cardinal rule of statutory construction is to ascertain and effectuate the legislative intent whenever possible." *Strother v. Lexington County Recreation Comm'n,* 332 S.C. 54, 62, 504 S.E.2d 117, 121 (1998). "All rules of statutory construction are subservient to the one that the legislative intent must prevail if it can be reasonably discovered in the language used, and that language must be construed in the light of the intended purpose of the statute." *Kiriakides v. United Artists Communications, Inc.,* 312 S.C. 271, 275, 440 S.E.2d 364, 366 (1994). While the "words used [in a statute] must be given their plain and ordinary meaning without resort to subtle or forced construction to limit or expand its operation[, t]he language must also be read in a sense which harmonizes with its subject matter and accords with its general purpose." *Hitachi Data Systems Corp. v. Leatherman,* 309 S.C. 174, 178, 420 S.E.2d 843, 846 (1992). "However plain the ordinary meaning of the words used in a statute may be, the courts will reject that meaning when to accept it would lead to a result so plainly absurd that it could not possibly have been intended by the Legislature or would defeat the plain legislative intention." *Kiriakides,* 312 S.C. at 275, 440 S.E.2d at 366.

The stated purpose of the DNA Act is to "develop DNA profiles on samples for law enforcement purposes and for humanitarian and non-law enforcement purposes." S.C.Code Ann. 23–3–610 (Supp.2003). Section 23–3–620 of the South Carolina Code (Supp.2003) lists the classes of offenders who are required by the act to provide a DNA sample for the DNA database and states when the samples are to be taken. In particular, the revised statutes section (C) pertains to an individual who is in prison and has not been released on parole, and section (E) pertains to an individual who has already been released on parole.

While the revised statutes meaning is not clear on its face, when section 23–3–620(C)(1) and (E)(1) of the South Carolina

Code (Supp.2003) are read in tandem, it becomes apparent that the legislature intended to require individuals who were placed on parole prior to July 1, 2000 and who are still on parole after July 1, 2000 to provide a DNA sample as a condition of their parole.

Section 23–3–620(C)(1) requires an individual who is serving a term of confinement on or after July 1, 2000 to submit a DNA sample as a prerequisite of his or her parole, should they be released on parole in the future. Section 23–3–620(E)(1) requires that an individual who is paroled on July 1, 2000 or later also submit a DNA sample as a condition of their parole. Therefore, Cannons interpretation of the statute, which would only require a sample from individuals granted parole after July 1, 2000, renders section 23–3–620(E)(1) duplicative of section (C) because under section (C) those same individuals would have already given a sample before being released.

Thus, when read as a whole, section 23–3–620 appears to have been intended to cover all individuals who commit the enumerated crimes, including those already in prison or out on parole. Construing the statute in light of its intended purpose, there is no logical reason why Cannon and other similarly situated individuals should be excluded from the statutes requirements. To do so would result in the exclusion of a large number of individuals and would frustrate the purpose of the legislation, which is to create an extensive DNA database.

Because such an exception does not appear to have been intended by the legislature and there is evidence to support the trial courts findings of fact, the trial court was correct in concluding that individuals who were placed on parole prior to July 1, 2000, and who are still on parole after July 1, 2000, are required by section 23–3–620 of the South Carolina Code (Supp.2003) to provide a DNA sample for the State DNA Database.

## II. *Ex Post Facto* Clause

■ Cannon also claims extending his term of incarceration solely because of his failure to provide a DNA sample violates the *ex post facto* clauses of the United States and South Carolina Constitutions. We disagree.

■■■■ While both the United States and South Carolina Constitutions specifically prohibit *ex post facto* laws, two critical elements must be present for a law to fall within the prohibition: (1) the law must apply to events that occurred before its enactment, and (2) the offender of the law must be disadvantaged by the law. *State v. Walls*, 348 S.C. 26, 30, 558 S.E.2d 524, 525 (2002). Additionally, "[f]or the *ex post facto* clause to be applicable, the statute or the provision in question must be criminal or penal in purpose and nature." *Id.*

The DNA Act meets the two elements of the *ex post facto* prohibition because the act applies to individuals who were placed on parole prior to the July 1, 2000 amendment, and Cannon has been disadvantaged because his parole will be revoked if he fails to provide a DNA sample; however, the *ex post facto* clause is not applicable because the act's purpose and nature is not criminal or penal.

■■■■ "[T]he determination whether a statute is civil or criminal is primarily a question of statutory construction, which must begin by reference to the act's text and legislative history." *In re Matthews*, 345 S.C. 638, 648, 550 S.E.2d 311, 316 (2001). "Where the legislature has manifested its intent that the legislation is civil in nature, the party challenging that classification must provide the clearest proof that the statutory scheme is so punitive in either purpose or effect as to negate the [legislatures] intention." *Id.* (quoting *Seling v. Young*, 531 U.S. 250, 121 S.Ct. 727, 148 L.Ed.2d 734 (2001)).

Section 23–3–610 of the South Carolina Code (Supp.2003) states the DNA Acts purpose is to "develop DNA profiles on samples for law enforcement purposes and for humanitarian and non-law enforcement purposes, as provided for in Section 23–3–640(B)." Section 23–3–640(B) lists seven uses for a DNA sample collected under the DNA Act:

(1) to develop a convicted offender database to identify suspects in otherwise nonsuspect cases;

(2) to develop a population database when personal identifying information is removed;

(3) to support identification research and protocol development of forensic DNA analysis methods;

(4) to generate investigative leads in criminal investigations;

(5) for quality control or quality assurance purposes, or both;

(6) to assist in the recovery and identification of human remains from mass disasters;

(7) for other humanitarian purposes including identification of missing persons.

S.C.Code Ann. 23-3-640 (Supp.2003). Thus, the legislatures intent was to create a statute that is civil in nature, and Cannon must prove the DNA Act is so punitive in either purpose or effect as to negate the legislatures intention.

While this is an issue of first impression in South Carolina, it is not unique in terms of litigation concerning DNA acts across the nation.[1] Inmates who were required to provide a DNA sample under Virginias DNA act attacked the constitutionality of the state statute on *ex post facto* grounds. *Jones v. Murray*, 962 F.2d 302, 308 (4th Cir.1992). The court held that Virginias requirement that inmates provide a DNA sample is not punitive in nature and the testing itself did not violate the *ex post facto* clause. *Id.* Additionally, the court held that the statutes possible effect of "authorizing prison punishment, the denial of good-time credits, or consideration by the parole board in granting discretionary parole to compel the inmate to provide a sample, [does not violate the *ex post facto* clause] because it does not thereby alter any prisoners sentence for past conduct." *Id.* at 310.

Because the South Carolina legislatures intent appears to have been to protect the public, and not to punish those individuals who commit or have committed the specified crimes, South Carolinas DNA Act is non-punitive and does not constitute a criminal penalty. *Cf. Walls*, 348 S.C. at 31, 558 S.E.2d at 526 (holding the sex offender registry was intended to protect the public from sex offenders who may re-offend and to aid law enforcement, not to punish offenders). Also, Cannon has failed to provide any evidence that the DNA Act

---

1. The courts in the following cases determined DNA database statutes are not penal in nature and do not violate the *ex post facto* clauses: *Gilbert v. Peters*, 55 F.3d 237 (7th Cir.1995); *Rise v. State of Oregon*, 59 F.3d 1556 (9th Cir.1995); *Shaffer v. Saffle*, 148 F.3d 1180 (10th Cir. 1998); *Kruger v. Erickson*, 875 F.Supp. 583 (D.Minn.1995).

is so punitive in effect as to negate the legislatures intent to create a civil statute.

Accordingly, the trial judge was correct in determining the DNA Act does not violate the *ex post facto* clauses of the United States or South Carolina Constitutions.

**AFFIRMED.**

STILWELL, and BEATTY, JJ., concur.