665 S.E.2d 231

**Cleveland SANDERS, Appellant,**

v.

**S.C. DEPARTMENT OF CORRECTIONS, Respondent.**

**No. 4419.**

Court of Appeals of South Carolina.

Submitted May 1, 2008.

Decided June 20, 2008.

Rehearing Denied Aug. 25, 2008.

412

414

Cleveland Sanders, of Columbia, for Appellant.

Andrew F. Lindemann and Christopher M. Coy, both of Columbia, for Respondent.

PIEPER, J.:

This appeal arises from inmate Cleveland Sanders' challenge of the manner by which payment of a two hundred and fifty dollar DNA processing fee ("fee"), required by statute, was deducted from his E.H. Cooper Trust Fund account ("Account"). We affirm.[1]

## FACTS

In 1994, the South Carolina Legislature created the State Deoxyribonucleic Acid Identification Record Database Act ("DNA Act"), § 23–3–600 through § 23–3–700 of the South

---

1. We decide this case without oral argument pursuant to Rule 215, SCACR.

Carolina Code of Laws, requiring certain inmates to provide DNA samples. The DNA Act lists the classes of offenders who are required to give a sample and states when the sample is to be taken. In addition, it provides all inmates required to submit a sample must pay the fee. This fee is mandatory and may not be waived by a court.

In August 2004, Sanders, an inmate at the Tuberville Correctional Institution ("Tuberville"), signed a "DNA Notice & Payment Procedures" form ("Payment Form") indicating three options for payment of the fee: Sanders could choose to pay the fee from his Account by completing a Form 15–1, "Cooper Trust Fund Withdrawal;" he could have a non-incarcerated family member pay the fee by money order; or, he could have the money deducted from his inmate wages at a rate of 5% when receiving more than $5.00 for the bi-weekly pay period. Sanders did not sign the Form 15–1 authorizing a deduction from his Account, but did sign the form authorizing a 5% deduction from his wages each pay period.

At some point after Sanders signed the Payment Form, an administrative decision was made to change the fee collection procedure in order to facilitate the recovery of the fees and to provide a more equitable system where wage-earning inmates were not the only inmates required to pay the fee. Under the new policy, inmates receiving non-wage deposits into their Account would automatically have 10% of those deposits retained to pay the fee. On August 18, Acting Director of Operations for the South Carolina Department of Corrections ("the Department"), Robert Ward, disseminated a memorandum to all wardens regarding the new procedure. The memorandum stated the new procedure would begin September 13, 2004, and requested all wardens notify the inmate population of the change in policy.

In late 2004, Sanders noticed several deductions listed on his Account statement for payment of the fee.[2] The deductions were made from monies directly deposited into his Account from family members and friends and were in addi-

---

**2.** Sanders received monthly statements indicating all Account activity. The statement included wages earned working in the prison library, monies directly deposited from family members and friends, and monies withdrawn by Sanders for canteen purchases.

tion to the 5% deductions taken from his wages. Sanders filed a Step 1 Inmate Grievance claiming the DNA Act did not allow the Department to withdraw non-wage related funds to cover the fee. He further argued the DNA Act, as applied to him, was an ex post facto violation which enhanced his sentence by assessing additional fees after his punishment was adjudicated. Sanders requested "the $24.50 (plus another $30 taken from a recent $300 deposit) be credited back to my account and future deposits to me from outside sources not be tampered with, unless, of course, the law is changed to reflect this practice no longer illegal."

The request was denied and Sanders filed an appeal to the Administrative Law Judge ("ALJ"). The ALJ found Sanders had a property interest in non-wage funds deposited into his Account, but he was provided notice of the change in procedure in a manner that satisfied the requirements of minimal due process. Additionally, the ALJ refused to hear Sanders' ex post facto claim finding that it lacked jurisdiction to hear the matter. Sanders appealed the decision to the circuit court. The circuit court found sufficient evidence to support the ALJ and affirmed the decision. This appeal follows.

## STANDARD OF REVIEW

In an appeal of the final decision of an administrative agency, the standard of appellate review is whether the ALJ's findings are supported by substantial evidence. S.C.Code Ann. § 1–23–610(C) (Supp.2007). Although this court shall not substitute its judgment for that of the ALJ as to findings of fact, we may reverse or modify decisions which are controlled by error of law or are clearly erroneous in view of the substantial evidence on the record as a whole. *Id.* In determining whether the ALJ's decision was supported by substantial evidence, this court need only find, considering the record as a whole, evidence from which reasonable minds could reach the same conclusion that the ALJ reached. *DuRant v. S.C. Dept. of Health and Environmental Control,* 361 S.C. 416, 420, 604 S.E.2d 704, 706 (Ct.App.2004). The mere possibility of drawing two inconsistent conclusions from the evidence does not prevent a finding from being supported by substantial evidence. *Id.* at 420, 604 S.E.2d at 707.

## LAW/ANALYSIS

Initially, we note the Department claims the circuit court erred in affirming the ALJ's initial finding Sanders had a property interest in his non-wage funds deposited in his Account. We do not address this issue because the Department failed to cross appeal the ALJ's finding. *Commercial Credit Loans, Inc. v. Riddle,* 334 S.C. 176, 187, 512 S.E.2d 123, 129 (Ct.App.1999) (holding a lower court's finding was the law of the case because respondent failed to cross appeal the issue); Rule 203(c), SCACR (detailing the proper procedure for filing a cross appeal). Therefore, the ALJ's finding that Sanders maintained a property interest in non-wage funds deposited into his Account is the law of the case and we find the circuit court did not err in affirming the ALJ on this issue. *See Charleston Lumber Co., Inc. v. Miller Housing Corp.,* 338 S.C. 171, 175, 525 S.E.2d 869, 871 (2000) (finding an unappealed ruling, right or wrong, is the law of the case).[3]

Accordingly, we next determine whether the notice provided Sanders met the minimal requirements of due process. Sanders alleges the circuit court erred in finding the ALJ properly construed the DNA Act so as to allow the Department to recover non-wages in payment of the fee. The DNA Act provides:

**Processing fee; payment by person providing sample.**

(A) A person who is required to provide a sample pursuant to this article must pay a two hundred and fifty dollar processing fee which may not be waived by the court. If the person is incarcerated, the fee must be paid before the person is paroled or released from confinement and may be garnished from wages the person earns while incarcerated. If the person is not sentenced to a term of confinement, payment of the fee must be a condition of the person's sentence and may be paid in installments if so ordered by the court.

S.C.Code Ann. § 23–3–670 (Supp.2007). Sanders claims the statute provides the fee may only be paid from wages earned

---

**3.** Our holding the ALJ's unappealed finding that Sanders maintained a property interest is the law of the case should in no way be interpreted as this court's resolution of this issue. We need not do so under the posture of this case.

by inmates. While the statute provides the fee may be "garnished from wages," we find it does not restrict the Department from recovering the fee from non-wages *voluntarily* deposited in the inmate's Account subsequent to notice of the deduction procedure.

■ We also find the circuit court properly affirmed the ALJ's finding that the notice provided of the change in the fee collection procedure met the minimal requirements of due process. When the DNA Act was first enacted, the Department adopted a procedure whereby all funds in an inmate's Account in excess of the recognized indigency level were automatically deducted until the fee was fully paid. *Sprouse v. Stanford,* No. 0:04–22477–RBH, 2008 WL 203022 (D.S.C. Jan.22, 2008). The Department subsequently changed its procedure to automatically deduct the fee from inmate wages only. *Id.* This meant that any non-wage deposits were not subject to an automatic deduction. *Id.* This procedure was in place at the time Sanders signed the Payment Form in August 2004. Under this procedure, inmates who received funds from outside sources avoided payment of the fee while inmates participating in work programs faced deductions from their accounts for the fee.

Consequently, the Department changed its procedure so as to automatically deduct 10% of all non-wage deposits into an Account until the fee was paid in full. *Id.* The manner by which deductions were made from inmate wages remained the same. The new procedure was outlined in an August memorandum sent to all wardens within the state. The memorandum also indicated inmates were to be notified of the change in the procedure prior to September 13, 2004. Michael Sheedy, the warden at Tuberville in August 2004, stated in his affidavit that the memorandum was posted in each housing unit on August 19, 2004. Further, Sheedy stated he notified the Inmate Relations Council about the information so that it could assist in disseminating the memorandum.

The ALJ found sufficient factual evidence that the memorandum was sent to Sheedy on August 18, 2004, and that Sheedy provided notice to all inmates. The ALJ concluded that such notice met the demands of minimal due process and therefore any funds deducted from the Account which were

deposited after notice were properly deducted. The circuit court found sufficient evidence to support the ALJ's finding. The circuit court's review of the ALJ order must be confined to the record. S.C.Code Ann. § 1–23–610(C) (Supp.2007). The circuit court may reverse or modify the decision based on errors of law, but may only reverse or modify an ALJ's findings of fact if they are clearly erroneous. *Id.* Further, neither the circuit court nor this court may substitute its judgment for that of the ALJ on questions of fact when the facts are supported by substantial evidence. *Id.; see also Al–Shabazz v. State,* 338 S.C. 354, 380, 527 S.E.2d 742, 756 (2000).

We find Sanders had notice. Prior to the change in procedure, he knew he was required to submit a DNA sample, pay a two hundred and fifty dollar fee, and knew that the fee was automatically going to be deducted from his *wages* as he signed a form notifying him of this procedure as to wages. Further, we find substantial evidence in the record to support the ALJ's finding that the memorandum was sent to and received by Sheedy and that he provided notice to all inmates regarding the change in the fee collection procedure as to *non-wages.* Therefore, we find there was sufficient evidence that the posting of the fee collection procedure provided notice and did not violate Sanders' due process rights; accordingly, the circuit court did not err in affirming the ALJ's decision.[4] Additionally, we note that once Sanders was provided notice of the change in procedure, the deposit of any money, beyond wages, into the Account by Sanders or his family and friends was completely voluntary.[5]

Lastly, Sanders argues the circuit court erred in affirming the ALJ's conclusion it lacked jurisdiction to hear his ex post facto claim. We agree.

---

**4.** On appeal, Sanders also finds error in the ALJ's acceptance of two arguments made by the Department. The Department claimed Sanders' non-wage monies were subject to garnishment because 1) he gave consent by signing a Form 1815 and 2) wage and non-wage monies were comingled and there was no way to differentiate wages from non-wages. Since the ALJ did not rely on either argument in his order, we find no error.

**5.** Likewise, we note that the new procedure for deducting the fee was not applied to any funds previously deposited into Sanders' Account. The new procedure was applied only to those monies deposited into his Account after September 13, 2004.

 An ALJ has jurisdiction to hear appeals from the final decision of the Department in non-collateral or administrative matters. *Al–Shabazz,* 338 S.C. at 369, 527 S.E.2d at 750. "An ex post facto violation occurs when a change in the law retroactively alters the definition of a crime or increases the punishment for a crime." *Jernigan v. State,* 340 S.C. 256, 261, 531 S.E.2d 507, 509 (2000). Ex post facto violation claims are non-collateral matters. *Id.* at 260, 531 S.E.2d at 509. Therefore, we find the ALJ did have jurisdiction to hear Sanders' ex post facto claim. However, for purposes of judicial economy, we address Sanders' ex post facto claim.

 A law violates the Ex Post Facto Clauses of the United States and South Carolina Constitutions if it 1) applies to events that occurred before its enactment, and 2) the offender of the law is disadvantaged by the law. *State v. Walls,* 348 S.C. 26, 30, 558 S.E.2d 524, 525 (2002); *see also Cooper v. S.C. Dept. of Probation, Parole, and Pardon Servs.,* 377 S.C. 489, 661 S.E.2d 106 (2008) (citing *State v. Walls* for the proposition that the above stated elements must be present for a law to fall within the prohibition). Further, "for the [E]x [P]ost [F]acto [C]lause to be applicable, the statute or the provision in question must be criminal or penal in nature." *Id.*

 A determination of whether a statute is civil or criminal in nature is primarily a question of statutory construction, which begins by reference to the act's text and legislative history. *In re Matthews,* 345 S.C. 638, 648, 550 S.E.2d 311, 316 (2001). "Where the legislature has manifested its intent that the legislation is civil in nature, the party challenging that classification must provide 'the clearest proof that the statutory scheme is so punitive in either purpose or effect as to negate the [legislature's] intention.'" *Id.* (quoting *Seling v. Young,* 531 U.S. 250, 121 S.Ct. 727, 148 L.Ed.2d 734 (2001)).

In *Cannon v. S.C. Dep't of Prob., Parole and Pardon Servs.,* 361 S.C. 425, 604 S.E.2d 709 (Ct.App.2004), *rev'd on other grounds,* 371 S.C. 581, 641 S.E.2d 429 (2007), this court found the DNA Act to be civil in nature. "Because the South Carolina legislature's intent appears to have been to protect the public, and not to punish those individuals who commit or

have committed the specified crimes, South Carolina's DNA Act is non-punitive and does not constitute a criminal penalty." *Id.* at 433, 604 S.E.2d at 714. Further, this court found the plaintiff had failed to prove the DNA Act was so punitive in either purpose or effect as to negate the legislature's intention. *Id.*

While the supreme court has since reversed *Cannon*, it did so based upon the statutory construction regarding the meaning of the word "paroled" as it applied to Cannon. The court did not address the finding by this court that the DNA Act was civil, not penal, or the finding that the Act did not violate the Ex Post Facto Clause. While not controlling due to its ultimate disposition on appeal, we find the statutory construction of the DNA Act and the reasoning provided by this court in *Cannon* nonetheless persuasive [6].

We simply are not convinced that the DNA Act makes an act which was innocent before the law, criminal thereafter and now punishes said act. Moreover, the DNA Act does not impose a subsequent greater punishment than that which existed at the time the act was committed, nor does it make a crime more aggravated than it was when committed before the change in law. Finally, the DNA Act does not alter in any way the nature of the proof or evidence necessary for a crime at the time of the commission of the offense. *See Stogner v. California*, 539 U.S. 607, 123 S.Ct. 2446, 156 L.Ed.2d 544 (2003); *Weaver v. Graham*, 450 U.S. 24, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981); *Calder v. Bull*, 3 U.S. 386, 3 Dall. 386, 1 L.Ed. 648 (1798); *see also Jones v. Murray*, 962 F.2d 302, 309 (4th Cir.1992).

Thus, we find the Ex Post Facto Clause is not applicable in this case because the DNA Act is civil, not criminal or penal, in nature. Further, having found that any deposits made into Sanders' Account after September 13, 2004, were *voluntarily*

---

6. In a recent decision upholding the processing fee requirement of the DNA Act, the federal district court in South Carolina specifically held that the requirement of payment of a processing fee is civil, not criminal or penal. *In re DNA Ex Post Facto Issues*, No. 2:99–CV–5555–RBH, 2007 WL 3104935 (D.S.C. Oct.19, 2007). In arriving at its determination, the district court relied on the legislative intent of the statute stating "it is clear that the intent of the state legislature was not to punish inmates by imposition of the fee but rather to provide funds for the implementation and operation of the database." *Id.* at *5.

made with notice of the fee collection procedure, we can find no way in which the DNA Act is so punitive in either purpose or effect as to negate the legislature's intent. Had Sanders told family members and friends not to deposit monies into his Account, he could have avoided any deduction about which he had been provided advance notice. Quite simply, we decline to find a punitive effect because Sanders had notice of the consequences and the contributions were voluntarily made.

## CONCLUSION

We find the DNA Act does not restrict the Department from recovering the fee from non-wages voluntarily deposited into the inmate's Account. Furthermore, we find there was sufficient evidence that the posting of the fee collection procedure provided notice and did not violate Sanders' due process rights; therefore, we conclude the circuit court did not err in affirming the ALJ's decision. Lastly, we find the ALJ did have jurisdiction to hear Sanders' ex post facto claim; however, we hold the Ex Post Facto Clause is not applicable in this case because the DNA Act is civil, not criminal or penal, in nature. Accordingly, the decision of the circuit court is

**AFFIRMED.**

HEARN, C.J., and GOOLSBY, A.J., concur.