**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

In Re: DNA Ex Post Facto Issues

---

Anthony Eubanks,
            *Plaintiff-Appellant,*

v.

South Carolina Department of
Corrections; William D. Catoe,
Individually and in his official
capacity as Director, South
Carolina Department of
Corrections; South Carolina Law
Enforcement Division,
            *Defendants-Appellees.*

No. 08-6169

Appeal from the United States District Court
for the District of South Carolina, at Charleston.
R. Bryan Harwell, District Judge.
(2:99-cv-05555-RBH; 2:99-cv-02195-MJP)

Argued: January 28, 2009

Decided: March 26, 2009

Before TRAXLER, DUNCAN, and AGEE, Circuit Judges.

---

Affirmed in part and reversed in part by published opinion.
Judge Traxler wrote the opinion, in which Judge Duncan and
Judge Agee joined.

**COUNSEL**

**ARGUED:** Justin Kahn, KAHN LAW FIRM, Charleston, South Carolina, for Appellant. Andrew Lindemann, DAVIDSON & LINDEMANN, Columbia, South Carolina, for Appellees.

**OPINION**

TRAXLER, Circuit Judge:

Anthony Eubanks appeals a district court order granting summary judgment against him in his *ex post facto* challenge to a South Carolina law requiring that certain prisoners provide DNA samples for South Carolina's DNA bank and pay a $250 processing fee before being paroled or released. We affirm the district court's ruling regarding the constitutionality of the requirements that a sample be provided and that the processing fee be paid. We hold, however, that the provision requiring payment of the fee before the prisoner is paroled or released from confinement may not be enforced against Eubanks.

I.

Eubanks was convicted in state court of criminal sexual conduct in the first degree and sentenced on April 6, 1995, to 28 years' imprisonment in the South Carolina Department of Corrections ("SCDC"). The South Carolina General Assembly enacted the State Deoxyribonucleic Acid Identification Record Database Act, *see* S.C. Code Ann. §§ 23-3-600 et seq. (2008) ("the Act"), to become effective on July 1, 1995. The Act provided, as is relevant here, that "[a]t such time as possible and before parole or release from confinement, a suitable sample from which DNA may be obtained for inclusion in the State DNA Database must be provided by . . . a person who

is convicted or adjudicated delinquent before July 1, 1995, and who was sentenced to and is serving a term of confinement on July 1, 1995, for . . . criminal sexual conduct in the first degree." S.C. Code Ann. § 23-2-620(B) (1999).[1] Throughout the time period relevant to this case, the Act provided:

> (A) A person who is required to provide a sample pursuant to this article must pay a two hundred and fifty dollar processing fee which may not be waived by the court. If the person is incarcerated, the fee must be paid before the person is paroled or released from confinement and may be garnished from wages the person earns while incarcerated. If the person is not sentenced to a term of confinement, payment of the fee must be a condition of the person's sentence and may be paid in installments if so ordered by the court.

S.C. Code Ann. § 23-3-670 (2007). The processing fees are the primary source of funding for South Carolina's DNA database.

In 1999 SCDC began the process of obtaining the inmate samples and collecting the fees from their prison trust funds. Pursuant to this process, Eubanks was required to provide a sample and SCDC deducted the full processing fee from his trust account.

In 1999 Eubanks filed suit in federal district court under 42 U.S.C.A. § 1983 (West 2003) against SCDC, the State Law Enforcement Division ("SLED"), and former SCDC Director William D. Catoe (collectively, "the State"). Eubanks alleged

---

[1]Section 23-3-620 has since been amended. *See* S.C. Code Ann. § 23-3-620 (2009).

that the requirements that each inmate provide a DNA sample to be included in the DNA database and that each pay a $250 processing fee violate the *Ex Post Facto* Clause of the United States Constitution.

Eubanks' suit was consolidated with the pending suits of several other inmates in an order that limited plaintiffs to raising the *ex post facto* challenges discussed above. All other constitutional claims or challenges to the Act that were asserted in any of the consolidated suits were dismissed without prejudice. Eubanks did not subsequently file a separate action.

Reviewing cross-motions for summary judgment, the district court denied the plaintiffs' motion and granted summary judgment against them. The court ruled that the DNA-sample and processing-fee requirements were not *ex post facto* because they were not punitive. The court further concluded that the Act did not prohibit the parole or release of prisoners who had not paid their required fees.

II.

Eubanks now argues that the district court erred in granting summary judgment against him.

We review the grant of summary judgment de novo. *See Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008). Article 1, § 9 of the United States Constitution provides that "[n]o Bill of Attainder or ex post facto Law shall be passed." The Supreme Court has explained that a statute is prohibited as *ex post facto* if it "'punishes as a crime an act previously committed, which was innocent when done; which makes more burdensome the punishment for a crime, after its commission, or which deprives one charged with crime of any defense available according to law at the time when the act was committed.'" *Dobbert v. Florida*, 432 U.S. 282, 292 (1977) (quoting *Beazell v. Ohio*, 269 U.S. 167, 169-70 (1925)). Thus, a

statute cannot be *ex post facto* unless it is penal in nature. *See United States v. O'Neal*, 180 F.3d 115, 122 (4th Cir. 1999).

We apply a two-part test in determining whether a law imposes punishment for *ex post facto* purposes:

> The Court first asks whether the legislature's intent, as discerned from the structure and design of the statute along with any declared legislative intent, was to impose a punishment or merely to enact a civil or regulatory law.
>
> Second, even if the legislature did not intend to impose a punishment, a law still may be said to do so if the sanction or disability that it imposes is "so punitive in fact" that the law "may not legitimately be viewed as civil in nature." A defendant faces a "heavy burden" in making a showing of such a punitive effect and can succeed only on the "clearest proof."

*Id.* (citations omitted) (quoting *United States v. Ursery*, 518 U.S. 267, 288 (1996); *Kansas v. Hendricks*, 521 U.S. 346, 361 (1997)). Our analysis relating to the second part of the test "focuses upon whether the sanction or disability that the law imposes 'may rationally be connected' to the legislature's non-punitive intent, or rather 'appears excessive' in light of that intent." *Id.* (citing *United States v. Salerno*, 481 U.S. 739, 747 (1987)). We hold that neither the DNA testing requirement nor the requirement that the defendants pay the $250 fee are penal in nature.

We note that two South Carolina Court of Appeals decisions have already held that the DNA-sample requirement is not penal in nature. *See Sanders v. South Carolina Dep't of Corr.*, 665 S.E.2d 231 (S.C. Ct. App. 2008); *Cannon v. South Carolina Dep't of Prob., Parole & Pardon Servs.*, 604 S.E.2d 709 (S.C. Ct. App. 2004), *rev'd on other grounds*, 641 S.E.2d

429 (S.C. 2007). In *Cannon*, the South Carolina Court of Appeals held that "the legislature's intent [in requiring the production of the samples] appears to have been to protect the public, and not to punish those individuals who commit or have committed the specified crimes." *Cannon*, 604 S.E.2d at 714. The court also concluded that the provision was not so punitive in effect that the legislature's intention would be negated. *See id.* Thus, it held that the DNA-sample requirement did not violate the *Ex Post Facto* Clause. *See id.* The court reaffirmed its holding in *Sanders*. *See Sanders*, 665 S.E.2d at 236-37.

We agree with these decisions — the correctness of which Eubanks does not challenge. The Act provides that its purpose is to allow SLED to build up the state DNA database by "develop[ing] DNA profiles on samples for law enforcement purposes and for humanitarian and nonlaw enforcement purposes, as provided for in Section 23-3-640(B)." S.C. Code Ann. § 23-3-610 (2009). Section 23-3-640(B) provides that DNA profiles may be used

(1) to develop a convicted offender database to identify suspects in otherwise nonsuspect cases;

(2) to develop a population database when personal identifying information is removed;

(3) to support identification research and protocol development of forensic DNA analysis methods;

(4) to generate investigative leads in criminal investigations;

(5) for quality control or quality assurance purposes, or both;

(6) to assist in the recovery and identification of human remains from mass disasters;

(7) for other humanitarian purposes including identification of missing persons.

S.C. Code Ann. § 23-3-640(B) (2009). These purposes are not punitive. *See Jones v. Murray*, 962 F.2d 302, 309 (4th Cir. 1992) (concluding that Virginia statute requiring that incarcerated felons provide blood samples was not punitive when its purpose was to establish a data bank to aid future law enforcement). Moreover, the Act is codified in Title 23 of the South Carolina Code, which deals with law enforcement and public policy, rather than in Title 16, which addresses crimes and punishments. *See Smith v. Doe*, 538 U.S. 84, 94 (2003) (explaining that the manner of an enactment's codification is "probative of the legislature's intent" regarding whether the act is civil or penal for *ex post facto* purposes). And, the DNA-sample requirement is certainly not "so punitive in fact" that it cannot be considered civil in nature.

The requirement that those providing the samples pay a $250 processing fee also is not punitive in nature.[2] *See Taylor v. Rhode Island*, 101 F.3d 780, 783-84 (1st Cir. 1996) (holding that $15 monthly fee upon prisoners to defray the costs of their imprisonment was not punitive and thus not *ex post facto*); *cf. Slade v. Hampton Rds. Reg'l Jail*, 407 F.3d 243, 251-52 (4th Cir. 2005) (upholding as nonpunitive $1-per-day charge to prisoners to defray the costs of their incarceration in the context of a claim by pre-trial detainees that their Due

---

[2]Eubanks argues that SCDC violated his constitutional rights in removing funds to pay the $250 fee from his prison account without a court order or garnishment proceeding. The argument Eubanks appears to advance is that he was deprived of his property without due process of law, but since no such claim is included in Eubanks' complaint, no such claim is before us. And, to the extent that Eubanks contends that the way in which the SCDC collected the $250 fee from him demonstrates that the statutory fee requirement is *ex post facto*, he is incorrect. *See Seling v. Young*, 531 U.S. 250, 267 (2001) (holding that "[a]n Act, found to be civil, cannot be deemed punitive 'as applied' to a single individual in violation of the . . . *Ex Post Facto* Clause[ ]").

Process rights were being violated because the charge constituted punishment without a conviction). The South Carolina General Assembly expressly provided that the funds generated by the fees will be "credited to [SLED] to offset the expenses SLED incurs in carrying out the provisions of this article." S.C. Code Ann. § 23-3-670(B) (2009). And, the relatively small size of the fee also indicates that it was not intended to have significant retributive or deterrent value. Thus, the "structure and design" of the statute demonstrate that the fee was intended to be an administrative charge to pay for the substantial expenditures that would be needed to implement, operate, and maintain the DNA database.

Further, Eubanks has not shown by the "clearest proof" that the fee requirement is "so punitive in fact that the law may not legitimately be viewed as civil in nature." *O'Neal*, 180 F.3d at 122 (internal quotation marks omitted). Eubanks offers nothing to suggest that $250 is excessive considering the costs associated with the database.

Apart from the penal or civil nature of the requirement that he pay the processing fee, Eubanks argues that the statute is *ex post facto* because it prohibits the parole or release of any prisoner who is required to pay the fee but has not yet done so. That such a requirement is *ex post facto* is established by *Jones*, wherein we struck down a portion of a Virginia statute that applied to some inmates whose criminal conduct predated the enactment of the statute. *See Jones*, 962 F.2d at 310-11. The statute deferred the release of the inmates under mandatory parole laws until they provided a blood sample. *See id.* We explained that deferral of those inmates' release dates would constitute "after-the-fact punishment when denying a sentence benefit [the right to parole] that [the prisoner] had at the time the offense was committed." *Id.* at 310.

In this case, as we have explained, the district court construed S.C. Code Ann. § 23-3-670 not to authorize such a

deferral. Eubanks contends that that construction was erroneous. We agree.

In interpreting a state law, we apply the statutory construction rules applied by the state's highest court. *See Carolina Trucks & Equip., Inc. v. Volvo Trucks of N. Am., Inc.*, 492 F.3d 484, 489 (4th Cir. 2007). Under South Carolina law, when interpreting a statute, "[a] possible constitutional construction must prevail over an unconstitutional interpretation." *Curtis v. State*, 549 S.E.2d 591, 597 (S.C. 2001) (internal quotation marks omitted). However, statutory language must be given its plain and ordinary meaning. *See City of Columbia v. Moser*, 311 S.E.2d 920, 921 (S.C. 1983). If a statute is unambiguous, its unambiguous meaning must be given effect and "the rules of statutory interpretation are not needed." *Knotts v. South Carolina Dep't of Nat. Res.*, 558 S.E.2d 511, 516 (S.C. 2002) (per curiam) (internal quotation marks omitted). We do not defer to an agency interpretation that is contrary to a statute's unambiguous meaning. *See Brown v. Bi-Lo, Inc.*, 581 S.E.2d 836, 838 (S.C. 2003).

The State argues that, because *Jones* was decided several years before the Act was enacted, we must presume that the General Assembly was aware that it would violate the *Ex Post Facto* Clause to delay the parole or release of an inmate who committed his crime prior to the statute's enactment. The State maintains that, especially in light of this presumption, the statute may plausibly be read merely *to set the time* by which the $250 must be paid rather than *to provide an enforcement mechanism* to ensure payment of the funds. The State argues that we should adopt this construction under the doctrine of constitutional avoidance and in deference to the interpretations of SCDC and SLED, the agencies charged with administering the statute.[3] We disagree.

---

[3]The district court stated in its summary judgment order that "[b]ased upon the briefs of both counsel, it appears to be undisputed that [SCDC and SLED] interpret the Act as not requiring a non-paying inmate to be held beyond any parole or release date." J.A. 272 (internal quotation marks omitted).

We conclude that the language of § 23-3-670(A) stating that "the fee must be paid before the person is paroled or released from confinement" unambiguously prohibits the parole or release of a prisoner required to pay the fee until the fee is paid. Since the statute is reasonably susceptible to only this reading, the doctrine of constitutional avoidance does not apply, and we need not defer to any contrary agency construction. And, because the requirement that an inmate not be paroled or released until he has paid his $250 fee, that requirement is unenforceable against him. *See Jones*, 962 F.2d at 311.

Our holding that this provision is unenforceable against Eubanks requires us to determine whether it is severable from the remainder of the statute. Under South Carolina law,

> [t]he test for severability is whether the constitutional portion of the statute remains complete in itself, wholly independent of that which is rejected, and is of such a character that it may fairly be presumed that the legislature would have passed it independent of that which conflicts with the constitution. When the residue of an Act, *sans* that portion found to be unconstitutional, is capable of being executed in accordance with the Legislative intent, independent of the rejected portion, the Act as a whole should not be stricken as being in violation of a Constitutional Provision.

*Joytime Distribs. & Amusement Co. v. South Carolina*, 528 S.E.2d 647, 654 (S.C. 1999) (per curiam) (citations and internal quotation marks omitted). Here, the statute remains complete without the requirement that inmates pay their fees before being granted parole or released from confinement. And, the purpose of defraying the cost of the implementation, operation, and maintenance of the DNA database can be accomplished without that requirement, especially considering that the statute allows for the garnishment of the prison-

ers' wages while the prisoners are incarcerated. We therefore conclude that the remainder of the statute is severable from the offending provision.

## III.

In sum, we reverse the grant of summary judgment against Eubanks and hold that the statutory requirement that the $250 fee must be paid before a prisoner is paroled or released from confinement is unenforceable against him. Otherwise, we affirm.

*AFFIRMED IN PART AND REVERSED IN PART*