# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

David Rose, Petitioner,

v.

South Carolina Department of Probation, Parole and Pardon Services, Respondent.

Appellate Case No. 2018-001641

---

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

---

Appeal from The Administrative Law Court
Deborah Brooks Durden, Administrative Law Judge

---

Opinion No. 27940
Heard October 29, 2019 – Filed January 29, 2020

---

## REVERSED AND REMANDED

---

Travis Dayhuff, of Nelson Mullins Riley & Scarborough, LLP, of Columbia, for Petitioner.

General Counsel Matthew C. Buchanan and Assistant General Counsel Tommy Evans Jr., both of Columbia, for Respondent.

---

**JUSTICE KITTREDGE:** For years, the Department of Probation, Parole, and Pardon Services (DPPPS) improperly denied inmates parole based on an incorrect interpretation of the statute setting forth the number of votes required by the parole

board. Because DPPPS had a policy of destroying records of parole hearings, it was, to put it mildly, difficult to determine which inmates were wrongly denied parole. Nevertheless, in 2013, following our decision in *Barton v. South Carolina Department of Probation, Parole & Pardon Services*,[1] DPPPS undertook a process to attempt to identify which inmates were improperly denied parole.

Petitioner David Rose was one of the inmates who claimed he was improperly denied parole; in Rose's situation, the parole hearing occurred in 2001. As we will explain, the evidence manifestly establishes that Rose received the requisite number of votes in favor of parole in 2001, but he remains in jail to this day.

Rose persistently sought relief through the years, often in circuit court, where DPPPS contended that Rose must pursue relief through the administrative process rather than through the judicial process. Rose also sought administrative relief throughout the years, to no avail. In one of the numerous circuit court proceedings, counsel for DPPPS acknowledged as "credible" the evidence put forth by Rose as to the requisite number of favorable votes he received at the 2001 parole hearing. Circuit Judge Addy, to his commendable credit, recognized Rose's seemingly-meritorious claim was continually denied in all forums. Judge Addy directed DPPPS to conduct an investigation, at which point Rose again pursued his challenge in the administrative forum. At the agency level, DPPPS denied relief to Rose because the agency records did not establish the actual vote count from the 2001 hearing. As noted, DPPPS had destroyed the very records it claimed were necessary for Rose to prevail.

Following DPPPS's final agency decision, the administrative law court (ALC) granted Rose relief, finding the only evidence as to the parole board's 2001 vote demonstrated Rose was entitled to parole. The court of appeals reversed. We now reverse the court of appeals and find the ALC's decision was supported by substantial evidence.

## I.

The parole board is comprised of seven members who vote on whether an inmate should receive parole. However, only a quorum—four of the seven members—need be present and vote at the hearings of those convicted of violent crimes. *See Garris v. Governing Bd. of S.C. Reins. Facility*, 333 S.C. 432, 453, 511 S.E.2d 48, 59 (1998) ("In the absence of any statutory or other controlling provision, the

---

[1] 404 S.C. 395, 745 S.E.2d 110 (2013).

common-law rule that a majority of the whole board is necessary to constitute a quorum applies.").

Prior to 1986, to receive parole, an inmate was required to obtain a simple majority vote in his favor. *See* S.C. Code Ann. § 24-21-645 (Supp. 1984). However, in conjunction with the passage of the Omnibus Criminal Justice Improvements Act of 1986, the General Assembly amended section 24-21-645(A) to prescribe "at least two-thirds of the members of the board [] authorize and sign orders authorizing parole for persons convicted of a violent crime." Act No. 462, 1986 S.C. Acts 2955, 2959, 2990–91; *see also* S.C. Code Ann. § 24-21-645(A) (Supp. 2019).

Between 1986 and 2013, DPPPS interpreted section 24-21-645 to require an inmate receive five votes in his favor out of seven possible parole board members' votes—at least two-thirds of the entire parole board—to receive parole, regardless of when the inmate was sentenced, even if it was prior to 1986 when the simple-majority vote requirement was in effect. DPPPS also did not relax the five-vote requirement in the event that less than a full parole board was present and voting on a particular inmate's fate.

However, in the 2013 *Barton* decision, this Court held DPPPS's adherence to the five-vote requirement was contrary to the statute. 404 S.C. at 415–17, 745 S.E.2d at 121–22. In particular, we found DPPPS's retroactive application of the two-thirds vote requirement violated the federal and state *Ex Post Facto* Clauses for those inmates sentenced prior to 1986 when the simple-majority vote requirement was the law. *Id.* at 403–14, 745 S.E.2d at 114–20. Additionally, we interpreted section 24-21-645 as only requiring inmates sentenced after 1986 to receive favorable votes from two-thirds of the parole board members actually present at the hearing. *Id.* at 414–19, 745 S.E.2d at 120–23 (noting that DPPPS's prior interpretation led to absurd results, for under that interpretation, it was possible for four members of the parole board (a quorum) to be present and unanimously vote to grant the inmate parole, but DPPPS nonetheless deny the inmate parole because he failed to receive five votes in his favor).

## II.

In 1978, Rose was sentenced to prison. Ten years later, Rose was granted parole. While on parole, Rose did not commit any additional crimes. He moved to Florida, secured employment and supported his family. However, Rose eventually failed to report to his parole officer, and, thus, in 2000, his parole was revoked and he was returned to prison.

One year later, Rose sought parole again before six out of the seven parole board members. Immediately following the hearing, a DPPPS employee allegedly informed Rose, his cousin Carlos Bell, and Rose's counsel that Rose's request for parole had been denied because he had received only four votes in his favor out of the six members voting that day.[2]

Over the next twelve years, Rose repeatedly attempted to seek administrative and judicial relief, claiming he had received four out of six possible votes in favor of parole and therefore met the requirements of section 24-21-645. Each time, after being shunted from one forum to the next, Rose was told his case had to be dismissed on jurisdictional grounds because he had filed his claim in the wrong place.

Rose persevered, and following our decision in *Barton*, he filed yet another action in circuit court claiming DPPPS had unlawfully denied him parole because he had received the correct number of votes in his 2001 parole hearing. Once again, Rose was told he had filed in the wrong forum. However, in his order dismissing the case, Judge Addy ordered DPPPS to conduct an investigation into the 2001 vote count pursuant to *Barton*.

Larry Patton, an employee of DPPPS, conducted the investigation. Patton reviewed Rose's and Bell's sworn statements,[3] both claiming to have been present when a DPPPS employee informed them Rose received four out of six votes in favor of parole. Patton also reviewed a hearing ledger which indicated Rose's 2001 petition for parole had been rejected but, importantly, did not indicate a vote count associated with the rejection. Because DPPPS had destroyed all of its other records prior to the *Barton* investigation, Patton was unable to review any other material related to the 2001 parole hearing aside from those two statements and the hearing ledger.

---

[2] As discussed, this was the period in which DPPPS required an inmate to receive five votes in his favor, regardless of how many parole board members were present and voting. Of course, four votes out of six is both a simple majority (under the pre-1986 version of section 24-21-645 that Rose was initially sentenced under) and a two-thirds majority (under the current version of section 24-21-645).

[3] Bell submitted an affidavit, and Rose testified in a prior lawsuit against DPPPS.

Following Patton's investigation, DPPPS made a final agency decision that Rose was not entitled to receive parole under the *Barton* case because there was insufficient evidence of the 2001 vote count. Specifically, the final order stated, "Unfortunately, *we* have been unable to locate *any information* from your parole hearing as *records have been destroyed* given your hearing was almost fourteen years ago. Therefore, it is the Department's position that *without any other evidence of the vote count* . . . the Department cannot release you to parole." (Emphasis added.) Ironically, in the most recent circuit court proceeding, DPPPS had not only admitted there was other evidence of the vote count via the Bell affidavit submitted by Rose, counsel for the agency informed Judge Addy that the affidavit was "credible."

Rose appealed to the ALC. The ALC reversed DPPPS's decision, finding there was no evidence whatsoever in the agency record to support DPPPS's decision that Rose did not receive four out of six votes in favor of parole. Rather, the ALC determined the *only* evidence in the record indicated Rose did, in fact, receive four votes in favor of parole.

DPPPS appealed the ALC's decision, and the court of appeals reversed in an unpublished opinion. *Rose v. S.C. Dep't of Prob., Parole, & Pardon Servs.*, Op. No. 2018-UP-087 (S.C. Ct. App. filed June 13, 2018). The court of appeals held, "[T]he ALC's determination that Rose received four votes in favor of parole is not supported by substantial evidence because, based on the record as a whole, reasonable minds would not find Bell's affidavit to be adequate evidence that Rose received four votes."

We granted Rose's petition for a writ of certiorari to review the court of appeals' decision.

### III.

Rose argues the court of appeals erred in reversing the ALC because it applied an improper standard of review. Specifically, Rose claims the only evidence considered by DPPPS in its investigation of the vote count are Rose's and Bell's sworn statements. Given the fact that there is no evidence to the contrary, Rose contends the ALC's finding that Rose received four votes was supported by substantial evidence. We agree.

In an appeal to this Court from a final agency decision, the Administrative Procedures Act (APA) provides the appropriate standard of review. *Barton*, 404

S.C. at 400, 745 S.E.2d at 113; *see also Sanders v. S.C. Dep't of Corr.*, 379 S.C. 411, 417, 665 S.E.2d 231, 234 (Ct. App. 2008) (citing S.C. Code Ann. § 1-23-610(C) (Supp. 2007)).

This Court will only reverse the decision of an ALC if that decision is:

> (a) in violation of constitutional or statutory provisions;
>
> (b) in excess of the statutory authority of the agency;
>
> (c) made upon unlawful procedure;
>
> (d) affected by other error of law;
>
> (e) [] clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
>
> (f) arbitrary or capricious or characterized by an abuse of discretion or clearly unwarranted exercise of discretion.

*Barton*, 404 S.C. at 401, 745 S.E.2d at 113 (quoting S.C. Code Ann. § 1-23-610(B) (Supp. 2012)). "The Court may not substitute its judgment for the judgment of the ALC as to the weight of the evidence on questions of fact." *Id*. (internal alteration marks omitted) (quoting S.C. Code Ann. § 1-23-610(B)). "In determining whether the ALC's decision was supported by substantial evidence, this Court need only find, looking at the entire record on appeal, evidence from which reasonable minds could reach the same conclusion that the ALC reached." *Id*.

In this case, the ALC's decision was supported by substantial evidence. The only evidence considered by DPPPS was Rose's and Bell's sworn statements and a hearing ledger which said "rejected" with no further information. Of the evidence considered by DPPPS, only Rose's and Bell's sworn statements provided any evidence of the vote count, and both men indicated Rose had received sufficient votes to be granted parole. The position advanced in the sworn statements has remained constant in the years since the 2001 parole hearing. Moreover, DPPPS admitted in circuit court that Bell's statement was "credible." Beyond this, DPPPS admitted it incorrectly calculated the votes necessary to receive parole prior to the *Barton* case and, therefore, had routinely denied parole to otherwise eligible inmates between 1986 and 2013. Against this actual evidence, DPPPS apparently believes it may simply claim that because it does not have any evidence of the vote

count *in its own records*—which it destroyed prior to Patton's investigation, and which, by its own admission, would not have included the vote count anyway—it can nonetheless somehow claim it properly denied Rose parole in 2001.

Considering the record as a whole, we find the decision of the ALC is manifestly supported by substantial evidence. *See Sanders*, 379 S.C. at 417, 665 S.E.2d at 234 ("In determining whether the [ALC]'s decision was supported by substantial evidence, this court need only find, considering the record as a whole, evidence from which reasonable minds could reach the same conclusion that the ALJ reached.").[4]

Because there is substantial evidence showing Rose received four out of six votes in his 2001 parole hearing, he has received both a simple-majority vote (required by the prior version of section 24-21-645) and a two-thirds majority vote of the parole board members present at the hearing (required by the current version of the statute). Thus, under either version of the statute, Rose received enough votes to be granted parole in 2001.[5]

---

[4] DPPPS also argues the ALC improperly shifted the burden to DPPPS. *See Leventis v. S.C. Dep't of Health & Envtl. Control*, 340 S.C. 118, 133, 530 S.E.2d 643, 651 (Ct. App. 2000) ("In administrative proceedings, the general rule is that an applicant for relief, benefits, or a privilege has the burden of proof, and the burden of proof rests upon one who files a claim with an administrative agency to establish that required conditions of eligibility have been met." (quoting 73A C.J.S. *Public Administrative Law and Procedure* § 128 at 35 (1983)). We disagree. The fact that the ALC did not accept DPPPS's summary rejection of Rose's claim in no manner reflects burden shifting. Rose met his burden of proof by submitting his and Bell's sworn statements for DPPPS's review, which the ALC found credible.

[5] DPPPS also claimed the ALC did not have the authority to grant the relief requested by Rose in that the ALC, by ruling in Rose's favor, effectively granted Rose parole. *See* S.C. Code Ann. § 24-21-640 (Supp. 2019) (delegating solely to the parole board the responsibility of determining if and when a prisoner meets the prerequisites for parole eligibility). The ALC rejected this argument, finding it did "not grant or deny [Rose] parole [itself], but rather require[d DPPPS] to carry out the result of a vote the [parole b]oard already made." We agree. *See Al-Shabazz v. State*, 338 S.C. 354, 376–77, 527 S.E.2d 742, 754 (2000) (finding the ALC has the authority to review non-collateral and administrative agency decisions); *see also Barton*, 404 S.C. at 400, 745 S.E.2d at 113 (upholding the ALC's authority to review DPPPS's decisions on the two-thirds requirement set forth in section 24-21-

Accordingly, because Rose has demonstrated that he was granted parole in 2001, yet remains in prison to this day, we reverse the decision of the court of appeals and remand to DPPPS to determine Rose's parole conditions.[6]

**REVERSED AND REMANDED.**

**BEATTY, C.J., HEARN, FEW and JAMES, JJ., concur.**

---

645); *cf. State v. McKay*, 300 S.C. 113, 115, 386 S.E.2d 623, 623 (1989) (finding the question of parole eligibility is separate from the court's authority to sentence an offender).

[6] We note it is undisputed Rose has been a model prisoner, incurring no disciplinary infractions while imprisoned.