**THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Compass Collegiate Academy, Inc., Appellant,

v.

Charleston County School District, Respondent.

Appellate Case No. 2019-001809

———————

Appeal From The Administrative Law Court
Harold W. Funderburk, Jr., Administrative Law Judge

———————

Unpublished Opinion No. 2023-UP-165
Heard October 12, 2022 – Filed April 26, 2023

———————

**AFFIRMED**

———————

Erik Tison Norton, of Harrell, Martin, & Peace, P.A., of Chapin, for Appellant.

Susan Marie Fittipaldi and John Marshall Reagle, both of Halligan Mahoney & Williams, of Columbia, for Respondent.

———————

**PER CURIAM:**  Compass Collegiate Academy, Inc. (Compass Collegiate) appeals the Administrative Law Court's (the ALC's) final order dismissing as moot Compass Collegiate's appeal of the Charleston County School District's (CCSD's) denial of its application to establish a charter school located in Charleston County,

South Carolina. Compass Collegiate argues the ALC erred in determining its appeal was moot because another sponsor approved its charter application and declining to address whether CCSD should have granted its charter application. We affirm.

**FACTS AND PROCEDURAL HISTORY**

In January 2019, Compass Collegiate submitted a charter school application seeking sponsorship from CCSD. Compass Collegiate also filed a charter school application with the South Carolina Public Charter School District (SCPCSD); however, the record is unclear when Compass Collegiate filed its application.[1] The first page of the online charter school application stated, "Select the desired sponsor(s) from the list below. This should be the same sponsor(s) to whom the Letter of Intent was submitted." The authorization at the end of the application stated, "This authorization indicates that the terms of this application constitute a contractual agreement between the two organizations represented below pursuant to [s]ection 59-40-60 of the South Carolina [Code (2020)] . . . . *The sponsor representative and the charter school committee chair will sign below after the school is approved*." Compass Collegiate presented at a special-called CCSD board meeting on April 8, 2019. At the conclusion of the board meeting, the CCSD board voted six to one in favor of denying Compass Collegiate's charter school application. SCPCSD approved Compass Collegiate's charter school application on April 16, 2019, and became Compass Collegiate's sponsor. CCSD denied Compass Collegiate's charter school application by order dated April 17, 2019, and CCSD sent a copy of the order to Compass Collegiate on May 20, 2019.

On May 7, 2019, Compass Collegiate appealed CCSD's denial of its charter school application, seeking a remand to the CCSD board to approve Compass Collegiate's charter school application. In its respondent's brief to the ALC, CCSD stated SCPCSD approved Compass Collegiate's charter school application on April 16, 2019, at its regularly scheduled meeting. It further stated Compass Collegiate announced on its Facebook page that day "that with this approval from SCPCSD[,] it would officially begin serving Charleston area scholars in August 2020."[2] CCSD argued Compass Collegiate's appeal was moot because by operation of

[1] The record includes a letter dated January 27, 2019, from Hunter Schimpff, a director of Compass Collegiate, to the Charleston County Local Delegation notifying it of Compass Collegiate's intent to submit a charter school application with SCPCSD.

[2] SCPCSD's website lists Compass Collegiate as one of its sponsored schools.

SCPCSD's approval of Compass Collegiate's charter school application, SCPCSD and Compass Collegiate had entered into a binding agreement that precluded Compass Collegiate from seeking a sponsorship from CCSD.

Compass Collegiate did not address whether SCPCSD had approved its charter school application and in its appellant's brief to the ALC, neither admitted nor denied CCSD's allegations regarding Compass Collegiate's operation in its reply brief to the ALC. Also in its reply brief, Compass Collegiate argued its appeal was not moot because the South Carolina Charter Schools Act of 1996[3] (the Charter Schools Act) did not provide that applicants could not submit charter school applications to multiple sponsors. It contended CCSD's assertion that approval of a charter school application created a binding agreement would result in an impermissible scenario preventing a subsequent sponsor from approving a charter school application and "would allow any subsequent sponsor . . . to deny an application improperly . . . without judicial review."

The ALC dismissed Compass Collegiate's appeal as moot. The ALC concluded SCPCSD's approval of Compass Collegiate's charter school application resulted in SCPCSD becoming Compass Collegiate's sponsor. It found that although the South Carolina Department of Education (the Department of Education) allowed applicants to seek sponsorship from multiple sponsors at the same time, the Charter Schools Act did not directly address the practice of submitting multiple charter school applications. The ALC determined the General Assembly did not account for a "duplicate application[ or ]multiple approval scenario" when the Charter Schools Act used language connoting only a single application scenario. It further determined the language pertaining to the approval procedure and contractual obligations between an approved applicant and its sponsor only contemplated a singular application process. The ALC found this limiting language evidenced that "any other authorization or approval [could not] be conditioned upon the subsequent approval or denial of a duplicate, outstanding application submitted for the same charter." Accordingly, it held, "[T]he [Charter Schools] Act clearly establishe[d] a statutory scheme in which an approved charter application immediately binds both parties to th[e] agreement. Once a sponsor approves a charter, it is required to negotiate and execute a charter contract with each approved school."

The ALC further found the sections of the Charter Schools Act that addressed the duration, renewal, revocation, and termination of an approved charter evidenced

---

[3] S.C. Code Ann. §§ 59-40-10 to -240 (2020 & Supp. 2022).

that "[the] approval [of a charter school application] constitutes a binding contractual agreement for a determinative term that is only severable under specific circumstances." It determined that when read together, these sections and the sections pertaining to approval procedure and contractual obligations between parties "never address or even contemplate a circumstance where one contract can be conditioned or dissolved in favor of the charter's approval by another charter granting authority."

The ALC found "it was the intent of the General Assembly that during any application period, only one application would be submitted to one potential sponsor for each charter school." It concluded it was evident the Department of Education interpreted the Charter Schools Act to allow charter schools to simultaneously submit multiple applications to multiple potential sponsors; however, the procedure following submission of multiple applications was unclear. The ALC noted the Department of Education's application template contained language that evidenced the General Assembly's intent and the Department of Education's interpretation "that an authorized charter signed by both parties upon approval constitute[d] a contractual agreement between those two parties." Moreover, it determined the Department of Education did not address or even contemplate a situation in which a charter is approved by multiple charter granting authorities or "when a charter school had been approved by one sponsor, thereby establishing the contractual relationship between the parties, but [the charter school] wishes to appeal the earlier denial by another [charter granting authority]." Accordingly, the ALC found the Department of Education "arbitrarily interpreted the [Charter Schools Act] to allow for multiple submissions during the same review period," which was contrary to the plain language of the Charter Schools Act because it could result in in the "formation of multiple binding contracts for the same charter school or a situation where a charter's approval and the resulting contract could, theoretically, be voided by the appeal of a previous denial before the ALC."

The ALC held SCPCSD's approval of Compass Collegiate's charter school application bound Compass Collegiate to operate as outlined in the application and bound SCPCSD to serve as Compass Collegiate's sponsor. Therefore, the ALC determined it could not grant effectual relief when this intervening event prevented Compass Collegiate from receiving a sponsorship from CCSD. The ALC declined to address Compass Collegiate's remaining issues concerning CCSD's denial of its charter school application. Compass Collegiate did not file a motion to alter or amend. This appeal followed.

**ISSUES ON APPEAL**

1. Did the ALC err by determining that Compass Collegiate's appeal was moot because another sponsor, SCPCSD, approved its charter application while CCSD denied its charter application?

2. Did the ALC err by failing to determine if CCSD should have granted Compass Collegiate's charter application?

**STANDARD OF REVIEW**

"If the board of trustees or area commission from which the applicant is seeking sponsorship denies a charter school application, the charter applicant may appeal the denial to the [ALC] pursuant to [s]ection 59-40-90." § 59-40-70(e). Section 1-23-610(B) of the South Carolina Code (Supp. 2022) "sets forth the standard of review when [this court] is sitting in review of a decision by the ALC on an appeal from an administrative agency." *S.C. Dep't of Corr. v. Mitchell*, 377 S.C. 256, 258, 659 S.E.2d 233, 234 (Ct. App. 2008). Section 1-23-610(B) provides:

> The court of appeals may . . . reverse or modify the decision if the substantive rights of the petitioner have been prejudiced because the finding, conclusion, or decision is:
>
> (a) in violation of constitutional or statutory provisions;
>
> (b) in excess of the statutory authority of the agency;
>
> (c) made upon unlawful procedure;
>
> (d) affected by other error of law;
>
> (e) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
>
> (f) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

"In an appeal of the final decision of an administrative agency, the standard of appellate review is whether the AL[C]'s findings are supported by substantial

evidence." *Sanders v. S.C. Dep't of Corr.*, 379 S.C. 411, 417, 665 S.E.2d 231, 234 (Ct. App. 2008). "Although [the appellate] court shall not substitute its judgment for that of the AL[C] as to findings of fact, [it] may reverse or modify decisions which are controlled by error of law or are clearly erroneous in view of the substantial evidence on the record as a whole." *Id.* "In determining whether the AL[C]'s decision was supported by substantial evidence, [the appellate] court need only find, considering the record as a whole, evidence from which reasonable minds could reach the same conclusion that the AL[C] reached." *Id.* "The review of the [ALC]'s order must be confined to the record." § 1-23-610(B). "Furthermore, the burden is on appellants to prove convincingly that the agency's decision is unsupported by the evidence." *Waters v. S.C. Land Res. Conservation Comm'n*, 321 S.C. 219, 226, 467 S.E.2d 913, 917 (1996).

**LAW AND ANALYSIS**

Compass Collegiate argues the ALC's dismissal of its appeal as moot was not supported by substantial evidence. It contends the approval of a charter school application is only the first step in forming a binding contract between the charter school and a sponsor and "is nothing more than an agreement to negotiate the charter school contract." Compass Collegiate asserts it did not execute a contract with SCPCSD, but even if it had executed a binding contract, its appeal would not be moot because nothing in the record excluded the possibility that SCPCSD would allow Compass Collegiate to terminate its charter and contract. It contends the ALC's holding that the General Assembly did not intend for a charter school to simultaneously apply to multiple sponsors was erroneous. Compass Collegiate avers the General Assembly created an avenue for a charter school to select between multiple sponsors by creating a second step of contractual negotiations "before the [charter] school and sponsor become legally bound." We disagree.

"The cardinal rule of statutory construction is to ascertain and effectuate the intent of the legislature." *Hodges v. Rainey*, 341 S.C. 79, 85, 533 S.E.2d 578, 581 (2000). "When a statute's terms are clear and unambiguous on their face, there is no room for statutory construction and a court must apply the statute according to its literal meaning." *Sloan v. Hardee*, 371 S.C. 495, 498, 640 S.E.2d 457, 459 (2007).

"Interpreting and applying statutes and regulations administered by an agency is a two-step process." *Kiawah Dev. Partners, II v. S.C. Dep't of Health & Env't Control*, 411 S.C. 16, 32, 766 S.E.2d 707, 717 (2014). "First, a court must determine whether the language of a statute or regulation directly speaks to the

issue.  If so, the court must utilize the clear meaning of the statute or regulation."
*Id.*  "If the statute or regulation 'is silent or ambiguous with respect to the specific issue,' the court then must give deference to the agency's interpretation of the statute or regulation, assuming the interpretation is worthy of deference."  *Id.* at 33, 766 S.E.2d at 717 (quoting *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 843 (1984)).  "[W]he[n] an agency charged with administering a statute or regulation has interpreted the statute or regulation, courts, including the ALC, will defer to the agency's interpretation absent compelling reasons.  We defer to an agency interpretation unless it is 'arbitrary, capricious, or manifestly contrary to the statute.'"  *Id.* at 34-35, 766 S.E.2d at 718 (quoting *Chevron*, 467 U.S. at 844).  When "the plain language of the statute is contrary to the agency's interpretation, the [c]ourt will reject the agency's interpretation."  *Brown v. Bi-Lo, Inc.*, 354 S.C. 436, 440, 581 S.E.2d 836, 838 (2003).

> As used in [the Charter Schools Act]:
>
> (1) A "charter school" means a public, nonreligious, nonhome-based, nonprofit corporation forming a school that operates by sponsorship of a public school district, [SCPCSD], or a public or independent institution of higher learning, but is accountable to the board of trustees, or in the case of technical colleges, the area commission, of the sponsor which grants its charter
>
> . . . .
>
> (4) "Sponsor" means the [SCPCSD] Board of Trustees, the local school board of trustees in which the charter school is to be located, as provided by law, a public institution of higher learning . . . or an independent institution of higher learning . . . from which the charter school applicant requested its charter and which granted approval for the charter school's existence.

§ 59-40-40.

"A charter school sponsor shall . . . approve charter applications that meet the requirements specified in [s]ections 59-40-50 and 59-40-60 . . . and negotiate and execute sound charter contracts with each approved charter school . . . ."

§ 59-40-55(B)(1) & (3).  "An approved charter application constitutes an agreement between the charter school and the sponsor."  § 59-40-60(A).

> A contract between the charter school and the sponsor must be executed and must reflect all provisions outlined in the application as well as the roles, powers, responsibilities, and performance expectations for each party to the contract. . . .  The Department of Education shall develop a contract template to be used by charter schools and the sponsor. The template must serve as a foundation for the development of a contract between the charter school and the sponsor.

§ 59-40-60(B).  "If the board of trustees or area commission approves the application, it becomes the charter school's sponsor and shall sign the approved application.  The sponsor shall submit a copy of the charter contract to the State Board of Education."  § 59-40-70(F).

"A charter must be approved or renewed for a period of ten school years; however, the charter only may be revoked or not renewed under the provisions of subsection (C) of this section."  § 59-40-110(A).  "The existence of another charter granting authority must not be grounds for the nonrenewal or revocation of a charter. Grounds for nonrenewal or revocation must be only those specified of this section."  § 59-40-110(G).  "A charter school seeking renewal may submit a renewal application to another charter granting authority if the charter school has not committed a material violation of the provisions specified in this section and the sponsor refuses to renew the charter."  § 59-40-110(I).

> A charter school may terminate its contract with a sponsor before the ten-year term of contract if all parties under contract with the charter school agree to the dissolution.  A charter school that terminates its contract with a sponsor directly may seek application for the length of time remaining on its original contract from another sponsor.

§ 59-40-115.

The Department of Education regulations define "sponsor" as:

> [T]he [SCPCSD] Board of Trustees; the local school board of trustees in which the charter school is to be located, as provided by law; a public institution of higher learning . . . or an independent institution of higher learning . . . from which the charter school applicant requested its charter and which granted approval for the charter school's existence.

S.C. Code Ann. Regs. 43-601(I)(C) (Supp. 2022).  "All charter school applications must be reviewed by the sponsor to determine compliance with the standards established below.  The applications submitted to the sponsor must demonstrate compliance with each standard.  The sponsor must make a determination to either approve or deny the charter."  S.C. Code Ann. Regs. 43-601(II)(A) (Supp. 2022).  "An applicant shall submit a letter of intent at least ninety days before submitting an application to the selected sponsor and a copy to the . . . Department of Education."  S.C. Code Ann. Regs. 43-601(II)(B) (Supp. 2022).  "A contract between the charter school and the sponsor must be executed and must reflect all provisions outlined in the application as well as the roles, powers, responsibilities, and performance expectations for each party to the contract."  S.C. Code Ann. Regs. 43-601(II)(D) (Supp. 2022).

We hold the ALC did not err in finding Compass Collegiate's appeal was moot.  First, the ALC did not err in finding SCPCSD's approval of Compass Collegiate's charter school application bound Compass Collegiate to operate as outlined in the application and bound SCPCSD to serve as Compass Collegiate's sponsor when the language of the Charter Schools Act is clear and unambiguous.  *See Sloan*, 371 S.C. at 498, 640 S.E.2d at 459 ("When a statute's terms are clear and unambiguous on their face, there is no room for statutory construction and a court must apply the statute according to its literal meaning.").  Section 59-40-40(1) provides that as used in the Charter Schools Act, a "charter school" is accountable to "*the* sponsor which grants its charter." (emphasis added).  The Charter Schools Act defines "sponsor" as "the [SCPCSD] Board of Trustees, the local school board of trustees in which the charter school is to be located, as provided by law, a public institution of higher learning . . . *or* an independent institution of higher learning . . .*from which the charter school applicant requested its charter and which granted approval for the charter school's existence*."  § 59-40-40(4) (emphases added).  Read together, these definitions make clear a charter school created under the Charter Schools Act may only have one sponsor.

The sections of the Charter Schools Act that address the renewal and revocation of a charter and the termination of a charter contract offer further support for this interpretation. Under section 59-40-110, subsections (A) and (G), "A charter must be approved or renewed for a period of ten school years; however, the charter only may be revoked or not renewed under the provisions of subsection (C) of this section"; however, "[t]he existence of another charter granting authority must not be grounds for the nonrenewal or revocation of a charter." This evidences the Charter Schools Act does not contemplate multiple sponsors for a charter school. Further, sections 59-40-110(I) and 59-40-115 state that a charter school may only submit a charter school application to another charter granting authority when the sponsor refuses to renew the charter or when the charter school and sponsor agree to terminate the contract.

The sections that address approval of charter school applications unambiguously dictate that the approval of an application creates a binding agreement between the charter school and sponsor. Section 59-40-70(F) expressly states that "[i]f the board of trustees or area commission approves the [charter school] application, *it becomes the charter school's sponsor and shall sign the approved application*." (emphasis added). We find this language makes clear that the approval of the charter school application creates a binding sponsorship agreement between the charter school and the sponsor. Subsections 59-40-55(B)(1) and (3) mandate that a sponsor "shall . . . negotiate and execute sound charter contracts with each approved charter school." Section 59-40-60(B) mandates, "A contract between the charter school and the sponsor must be executed and must reflect all provisions outlined in the application . . . ." Moreover, section 59-40-60(A) expressly states, "An approved charter application constitutes an agreement between the charter school and the sponsor." These sections, when read together, clearly provide that the approval of a charter school application acts to bind the charter school and the sponsor and mandate further action in executing a contract that incorporates the application. Because a charter school is limited to one sponsor, the Charter Schools Act clearly prohibits a charter school from simultaneously submitting applications to multiple charter granting authorities when the approval of an application creates a binding agreement between the charter school and sponsor.

Further, to the extent the option to submit a charter school application to multiple charter granting authorities on the Department of Education's online application can be construed as an agency interpretation of the Charter Schools Act, we find this interpretation is manifestly contrary to the Charter Schools Act. *See Kiawah Dev. Partners, II*, 411 S.C. at 34-35, 766 S.E.2d at 718 ("[W]he[n] an agency charged with administering a statute or regulation has interpreted the statute or

regulation, courts, including the ALC, will defer to the agency's interpretation absent compelling reasons. We defer to an agency interpretation unless it is 'arbitrary, capricious, or manifestly contrary to the statute.'" (quoting *Chevron*, 467 U.S. at 844)). Although the language of the Charter Schools Act clearly and unambiguously prohibits a charter school from simultaneously submitting applications to multiple charter granting authorities when the approval of an application creates a binding agreement between the charter school and sponsor, we acknowledge the Charter Schools Act is silent concerning multiple applications. *See id.* at 33, 766 S.E.2d at 717 ("If the statute or regulation 'is silent or ambiguous with respect to the specific issue,' the court then must give deference to the agency's interpretation of the statute or regulation, assuming the interpretation is worthy of deference." (quoting *Chevron* 467 U.S. at 843)). Because allowing a charter school to simultaneously submit charter school applications to multiple charter granting authorities is contrary to the plain language of the Charter Schools Act, we reject the Department of Education's interpretation. *See Brown, Inc.*, 354 S.C. at 440, 581 S.E.2d at 838 (holding when "the plain language of the statute is contrary to the agency's interpretation, the [c]ourt will reject the agency's interpretation").

We note, however, that the language contained in the Department of Education's application template and regulations reflect an interpretation that is consistent with the plain language of the Charter Schools Act. The authorization at the end of the application stated, "This authorization indicates that the terms of this application constitute a contractual agreement between the two organizations represented below pursuant to [s]ection 59-40-60 . . . . *The sponsor representative and the charter school committee chair will sign below after the school is approved.*" This language reflects that the approval of a charter school application creates a binding agreement between the charter school and sponsor. Moreover, the language of the Department of Education's regulations is consistent with the plain language of the Charter Schools Act. Specifically, the regulations provide that a sponsor is the entity that granted approval for the charter school's existence, use singular language when referring to the application process, and mandate that the charter school and sponsor execute a contract reflecting the provisions contained in the approved charter school application. *See* Regulation 43-601(I)(C), (II)(A) to (D).

Based on the foregoing, we find the ALC did not err in holding SCPCSD's approval of Compass Collegiate's charter school application bound Compass Collegiate to operate as outlined in the application and bound SCPCSD to serve as Compass Collegiate's sponsor. Although Compass Collegiate denies it executed a contract with SCPCSD, it admits SCPCSD approved its charter school application

and therefore, SCPCSD became Compass Collegiate's sponsor, which created a binding agreement between the parties as provided in the Charter Schools Act.

Second, we hold the ALC did not err in finding Compass Collegiate's appeal was moot. As we stated, SCPCSD became Compass Collegiate's sponsor when it approved Compass Collegiate's charter school application, which created a binding agreement between the parties. Although section 59-40-115 provides that a charter school *may* terminate its contract with a sponsor before the term of the contract expires if both parties agree to the dissolution, Compass Collegiate had not terminated its sponsorship with SCPCSD at the time the ALC issued its order. Accordingly, we find the ALC did not err in determining Compass Collegiate could not obtain sponsorship from CCSD when it had a then-existing sponsorship with SCPCSD and therefore, an intervening event precluded it from granting Compass Collegiate effectual relief. *See Cheap-O's Truck Stop, Inc. v. Cloyd*, 350 S.C. 596, 602, 567 S.E.2d 514, 517 (Ct. App. 2002) ("An appellate court will not pass on moot and academic questions or make an adjudication where there remains no actual controversy." (quoting *Curtis v. State*, 345 S.C. 557, 567, 549 S.E.2d 591, 596 (2001))); *see also Sloan v. Friends of Hunley, Inc.*, 369 S.C. 20, 26, 630 S.E.2d 474, 477 (2006) ("A moot case exists where a judgment rendered by the court will have no practical legal effect upon an existing controversy because an intervening event renders any grant of effectual relief impossible for the reviewing court.").

**CONCLUSION**

Based on the foregoing, we affirm the ALC's order dismissing Compass Collegiate's appeal as moot.[4]

**AFFIRMED.**

**KONDUROS, HEWITT, and VINSON, JJ., concur.**

---

[4] Our affirmance of the ALC's order dismissing Compass Collegiate's appeal as moot is dispositive of Compass Collegiate's remaining issue. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (2008) (holding an appellate court need not address remaining issues on appeal when its determination of a prior issue is dispositive).